**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa Marie McHatten, ) | No. CV 03-1094-PCT-EHC |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| Chase Home Finance LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

On July 20, 2005, Plaintiff, proceeding pro se at the time, filed a Third Amended Complaint for Permanent Injunction and Other Equitable Relief and Monetary Civil Penalties (Doc. 69). Plaintiff asserted claims for violation of statutory rights under the Uniform Land Security Interest Act ("ULSIA"), the Federal Trade Commission Act ("FTCA"), the Equal Credit Opportunity Act ("ECOA"), the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and the Real Estate Settlement Procedures Act ("RESPA"). Chase Manhattan Mortgage Corporation, and its successors and assignees, was the named Defendant.

On May 5, 2006, Defendant filed a Motion for Summary Judgment (Doc. 104) on all of Plaintiff's claims. On July 11, 2006, Plaintiff filed a Motion for Summary Judgment (Doc. 118) on all or part of her claims. On October 18, 2006, the Court filed an Order (Doc. 125) granting Defendant's Motion for Summary Judgment and denying Plaintiff's Motion for

Summary Judgment. Judgment was entered on October 18, 2006 (Doc. 126). Plaintiff, proceeding pro se, filed a Notice of Appeal (Doc. 131) on November 1, 2006.

On March 19, 2009, the Court of Appeals for the Ninth Circuit filed a Memorandum affirming in part, vacating in part and remanding for further proceedings. The Court of Appeals affirmed the summary judgment ruling on Plaintiff's claims under the Uniform Land Security Interest Act, the Federal Trade Commission Act, the Fair Debt Collection Practices Act, and 15 U.S.C. § 1681s-2(a) of the Fair Credit Reporting Act, as Plaintiff did not challenge the ruling on those claims. The appellate court vacated the Judgment as to Plaintiff's claims for common law breach of contract and under the Equal Credit Opportunity Act based on Defendant's alleged failure to provide adequate notice pursuant to 15 U.S.C. § 1691(d)(1), stating in relevant part as follows:

> We vacate the judgment with respect to McHatten's claims for common law breach of contract based on (a) failure to provide notice of U.S. Department of Housing and Urban Development counseling, and (b) failure to provide loss mitigation, including acceptance of partial payment and provision of disaster relief assistance. We also vacate the judgment with respect to McHatten's claims under the Equal Credit Opportunity Act based on Chase's alleged failure to provide adequate notice pursuant to 15 U.S.C. § 1691(d)(1). It is unclear whether the district court considered evidence submitted by McHatten in support of these claims. To the extent this evidence is admissible, the district court on remand should consider it in determining whether McHatten raises a genuine issue of material fact for trial. *See Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)(remanding case to the district court where purportedly excluded evidence may be admissible, and may suffice to create an issue of fact).

The Court of Appeals affirmed the District Court's summary judgment ruling on Plaintiff's remaining claims. The mandate issued on April 14, 2009 (Doc. 147).

On May 28, 2009, the Court held a Status Conference (Doc. 151) in this case to discuss further proceedings following remand. On July 24, 2009, the Court issued an Order (Doc. 154) allowing Plaintiff to serve an amended and complete Disclosure Statement under

- 2 -

1 Fed.R.Civ.P. 26(a) and setting a briefing schedule for the filing of motions for summary
2 judgment.

3 On October 22, 2009, Defendant filed a Motion for Summary Judgment (Doc. 157),
4 supported by a Statement of Facts (Doc. 158). On December 1, 2009, Plaintiff, now
5 represented by counsel, filed a Response (Doc. 161) to Defendant's Motion for Summary
6 Judgment, supported by a Controverting Statement of Facts (Doc. 162). Defendant filed its
7 Reply (Doc. 167) in support of summary judgment supported by a Supplemental Statement
8 of Facts (Doc. 168) on January 22, 2010.

9 On February 2, 2010, Plaintiff filed a Motion to Strike (Doc. 169) Defendant's
10 Supplemental Statement of Facts. Plaintiff argued that Defendant had willfully chosen not
11 to disclose certain records that were now included as exhibits to Defendant's Supplemental
12 Statement of Facts (Doc. 168) filed on January 22, 2010. Plaintiff sought as a sanction the
13 striking of Defendant's Supplemental Statement of Facts and Exhibits (Doc. 168). On
14 February 17, 2010, Defendant filed a Response (Doc. 170), acknowledging in part that certain
15 exhibits to its Supplemental Statement of Facts had not been disclosed in error and suggested
16 in the alternative that Plaintiff be allowed to file a Sur-Reply to Defendant's Motion for
17 Summary Judgment. On March 10, 2010, the Court issued an Order (Doc. 171) allowing
18 Plaintiff to file a Sur-Reply and denying without prejudice Plaintiff's Motion to Strike to the
19 right of Plaintiff to re-urge the matter as appropriate at the conclusion of the case.

20 On April 16, 2010, Plaintiff filed a Sur-Reply to Defendant's Motion for Summary
21 Judgment (Doc. 174).

<u>Background Facts</u>

23 On or about September 11, 1998, Plaintiff executed a promissory note ("the Note")
24 and Deed of Trust ("Deed of Trust") for a residential mortgage loan regarding property
25 located at 2601 Mullen Drive, Kingman, Arizona ("the Mullen property") (Doc. 158 -
26 Defendant's Statement of Facts ("DSOF") ¶ 1). The Note and Deed of Trust were assigned

- 3 -

1 to Chase Manhattan Mortgage Corporation, now Defendant Chase Home Finance LLC
2 (DSOF ¶ 2).

3       Pursuant to the Note, Plaintiff was required to make monthly payments in the amount
4 of $472.23 (DSOF ¶ 3). Plaintiff sometimes was late in making her monthly payments and
5 payments were sometimes reversed because her payment checks were returned for
6 insufficient funds (DSOF ¶ 4). Plaintiff says that prior to September 11, 2001, she made two
7 late payments during which Defendant serviced the mortgage (Doc. 162 - Plaintiff's
8 Controverting Statement of Facts ("PCSOF") ¶ 4).

9       Plaintiff did not make any further payments on her loan after December 2001 (DSOF
10 ¶ 5).

11       In a letter from Defendant addressed to Plaintiff dated March 27, 2002, Defendant
12 notified Plaintiff that she had been "given every notice and consideration possible to bring
13 your loan current" and that foreclosure was being recommended unless all past due
14 payments, including late charges, are remitted in the form of a certified check or money order
15 within 7 days from the letter's date (PCSOF - Exhibit 6). The letter stated that "[t]he
16 seriousness of the default requires your immediate attention" (id.).

17       Defendant notified Plaintiff in a letter dated April 9, 2002 of the following: "This shall
18 serve as formal notice that you are in violation of your obligations under the terms of your
19 Note and Mortgage/Deed of Trust securing the above referenced property, in that you have
20 not made payments on the account as agreed ... Your mortgage is presently in default for the
21 payment due January 01, 2002 and all subsequent payments" (Doc. 168 - Defendant's
22 Supplemental Statement of Facts - Exhibit A [Letter dated April 9, 2002]). Plaintiff was
23 advised of how to cure the default by paying a certain amount on or before May 9, 2002
24 using certified funds or money order. The letter stated: "Any remittance received equaling

- 4 -

less than the full amount due will be returned to you and we will, without delay, invoke our acceleration option and commence foreclosure proceedings" (id.).[1]

In a letter dated June 7, 2002, Defendant's representative wrote Plaintiff that Defendant had received her financial analysis information and that in order to determine her qualifications for any Foreclosure Alternative, additional items ("pay stubs (2 most current)") should be mailed within 7 days (PCSOF - Exhibit 10).

In a letter dated June 27, 2002, Defendant's representative wrote to "Randy England c/o Lisa M. McHatten" that the request for Homeowner's Assistance had been denied for "failure to send in additional documents" (PCSOF - Exhibit 11). This letter further advised that "[y]our sale date is schedule[d] for September 18, 2002 and your file has been forwarded to the Foreclosure Department for further action" (id.).

Plaintiff alleges that the events of September 11, 2001 and their effect on the economy resulted in a severe income loss to her business, Supreme Carpet Care (PCSOF ¶ 5). Plaintiff did not make the payment on the mortgage in January 2002 (PCSOF ¶ 7). Plaintiff alleges that in February 2002, she contacted Defendant by phone to advise of her temporary hardship and request assistance but was unable to reach anyone (PCSOF ¶ 7). Plaintiff alleges she made similar attempts to contact Defendant in March and April 2002 but Defendant offered no assistance (PCSOF ¶ 7). In April 2002, Plaintiff spoke to "Pam" to offer Defendant $1,500 but "Pam" refused the money because it was not $1,810.01, the full amount owed (PCSOF ¶ 7).

Plaintiff claims that between January 1, 2002 until April 30, 2002, Defendant did not provide notice to Plaintiff of any available assistance, financial counseling, or disaster relief assistance (PCSOF ¶ 7). Plaintiff has set forth the circumstances of her attempts to contact Defendant between May and September 2002, including submitting a May 1, 2002

---

[1] This letter from Defendant to Plaintiff dated April 9, 2002 was provided to Plaintiff in response to a request for production (Doc. 170 at 1).

- 5 -

1 application for homeowner's assistance to Defendant by fax (PCSOF ¶ 7). She alleges she faxed the last requested document on June 17, 2002 (PCSOF ¶ 7). Plaintiff alleges that Defendant's representative acknowledged receipt of the requested documents on July 3, 2002 and the matter was transferred to another of Defendant's employees (PCSOF ¶ 7).

Defendant construes the Deed of Trust as allowing for acceleration and invocation of the power of sale and other remedies permitted by applicable law in the event of default (DSOF ¶ 6).

Plaintiff, on the other hand, contends that the Note and Deed of Trust included limitations under HUD provisions. For example, the Note included the provision that "regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations" (PCSOF ¶ 6). The Deed of Trust contained the provision that "In many circumstances regulations by the [HUD] Secretary will limit the Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This security instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary" (PCSOF ¶ 6).

Defendant, under the terms of the Note and Deed of Trust, caused a trustee's sale of the Mullen property to be noticed for September 17, 2002 (DSOF ¶ 7).

On September 16 and 17, 2002, Defendant's representatives telephoned Plaintiff and left messages on Plaintiff's answering machine (DSOF ¶ 8). Plaintiff was advised in these messages that Defendant would consider a repayment plan if Plaintiff made a financial contribution prior to sale (DSOF ¶ 8). Plaintiff did not return these calls (DSOF ¶ 9).

Plaintiff does not dispute receiving Defendant's September 16 and 17, 2002 phone messages (PCSOF ¶ 8). Plaintiff says she sent her bankruptcy petition to Yuma, Arizona on September 16, 2002 (PCSOF ¶ 7 & Exhibit A ¶ 29).

On September 17, 2002, Plaintiff's Chapter 13 bankruptcy petition was filed in the United States Bankruptcy Court in Yuma, Arizona [Case No. 02-1218-RJHB] (DSOF ¶ 10).

- 6 -

1  As a result of Plaintiff's bankruptcy filing, the trustee's sale and discussions regarding any
2  workout plans were halted (DSOF ¶ 11). Plaintiff's bankruptcy case was dismissed on
3  November 27, 2002 (DSOF ¶ 12).

4  Following dismissal of Plaintiff's bankruptcy case, Defendant continued the
5  foreclosure proceedings (DSOF ¶ 12).

6  On December 5, 2002, Plaintiff refiled her bankruptcy case (DSOF ¶ 13). Defendant
7  filed a motion in the bankruptcy court seeking relief from the automatic stay (DSOF ¶ 14).

8  Plaintiff did not file an objection to Defendant's motion for relief from stay (DSOF
9  ¶ 14). Plaintiff says she thought the proposed order that was stapled to the motion to lift the
10 stay was the actual order (PCSOF ¶ 14).

11 Defendant's motion for relief from stay was granted and on April 17, 2003, the
12 trustee's sale of the Mullen property was completed (DSOF ¶ 15).

13 Plaintiff alleges that Defendant made no attempt to contact her regarding a "workout
14 plan" that had been alluded to in Defendant's September 16 and 17, 2002 phone messages
15 (PCSOF ¶¶ 12 & 14). Plaintiff alleges she did not receive any notice of Trustee's Sale for
16 April 17, 2003 (PCSOF ¶ 15). According to Plaintiff, Defendant became the owner of
17 Plaintiff's home (the Mullen property) for $74,985.00 (PCSOF ¶ 15). Plaintiff received a
18 Notice to Vacate on May 2, 2003, claiming this was her first notice of the Trustee's Sale
19 (PCSOF ¶ 15).

20 Plaintiff asserts the loss of her business, Supreme Carpet Care, as a result of the loss
21 of her home (PCSOF ¶ 19). Supreme Carpet Care, a home-based business, grossed
22 $38,155.51 in 1999 and $56,264.42 in 2000 (PCSOF ¶ 19). Plaintiff asserts that she, her
23 husband and her daughter suffered emotional distress (PCSOF ¶ 20).

24 Plaintiff has provided a letter from Defendant to Plaintiff dated September 12, 2003
25 which referred to enclosed copies of Defendant's correspondence to Plaintiff dated April 9,
26 2002, May 15, 2002, and May 20, 2002 which advised Plaintiff of the default status of her
27 mortgage loan (PCSOF - Exhibit 16). According to the letter, Plaintiff contacted Defendant's
28

1 Homeowner's Assistance Department in June 2002 for a possible workout program and as
2 of August 6, 2002 Defendant received the required financial information from Plaintiff to
3 determine if a workout plan was available (id.).  The letter states that "as you filed for
4 Chapter 13 Bankruptcy protection on September 17, 2002, Chase was unable to offer you a
5 workout program" (id.).

## Standard of Review

In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party.  Summary judgment is appropriate if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  A material fact is one "that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party opposing summary judgment may not rely merely on allegations or denials in the party's pleading but its response must set out specific facts showing a genuine issue for trial. Rule 56(e).  *See also*, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The court may not make credibility determinations or weigh the evidence, as these are for the fact-finder.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

Generally, evidence that can be presented in an admissible form at trial may be considered on summary judgment.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036-1037 (9th Cir. 2003)(at the summary judgment stage, the court does not focus on the admissibility of the evidence's form but instead focuses on the admissibility of its contents). Even declarations that do contain hearsay are admissible for summary judgment purposes where they can be presented in an admissible form at trial.  *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004).

## Plaintiff's Breach of Contract Claim

In the Third Amended Complaint, Plaintiff has alleged that Defendant breached the parties' contract by failing to provide notice of HUD counseling and loss mitigation (Count

- 8 -

1  2). In order to establish a breach of contract claim, a party must show the existence of a
2  contract, a breach of contract, and resulting damages by the non-breaching party. *Graham*
3  *v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975).

4  Defendant argues that Plaintiff's allegations in the Third Amended Complaint are too
5  vague to make out a claim, that Plaintiff has not shown any term of the contract that
6  Defendant violated, that Plaintiff did not actually tender any partial payment on her
7  delinquent mortgage, and that the evidence shows that Defendant attempted to work out a
8  solution with Plaintiff. Defendant argues that there is no private right of action for breach
9  of contract under the HUD regulations cited by Plaintiff. Defendant argues that Plaintiff's
10 alleged damages are not cognizable under a breach of contract claim.

11 Plaintiff argues that Defendant was required by the terms of the Note and Deed of
12 Trust to follow HUD regulations when servicing the mortgage and that Defendant ignored
13 HUD regulations when it refused to accept partial payment of the delinquent amounts due.
14 Plaintiff argues that Defendant breached the contract by failing to provide notice of available
15 assistance including housing counseling, loss mitigation and disaster relief assistance.
16 Plaintiff argues that her damages include $100,000 in lost equity in the home, the destruction
17 of her home-based business, and loss of business income.

18 In this case, the Note and Deed of Trust set forth the terms of Plaintiff's mortgage
19 loan. The Note provides that:

> In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means Secretary of Housing and Urban Development or his or her designee.

(PCSOF - Exh. 1).

The Deed of Trust includes the following provision:

> In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This

- 9 -

> Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(PCSOF - Exh. 2).

Courts have held that HUD regulations promulgated under the National Housing Act do not provide a claim to the mortgagor for duty owed or for the mortgagee's failure to follow the regulations. *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360-361 (5th Cir. 1977). *See also*, *Fantroy v. Countrywide Home Loans, Inc.*, 2007 WL 2254941 *2 (N.D. Tex. 2007)(Civil Action No. 3:06-CV-1889-K).

The undisputed facts show that, pursuant to the Note, Plaintiff was required to make monthly payments of $472.23 (DSOF ¶ 3). Plaintiff did not make any further payments on her loan after December 2001 (DSOF ¶ 5). Defendant notified Plaintiff as of April 9, 2002 that she was in default on her mortgage. Defendant advised Plaintiff of the steps to be taken to cure the default.

According to Plaintiff, in February, March and April 2002, Plaintiff tried to contact Defendant by phone to advise of her temporary hardship and request assistance but alleges she was unable to reach anyone or Defendant offered no assistance (PCSOF ¶ 7). In April 2002, Plaintiff allegedly spoke to "Pam" to offer Defendant $1,500 but "Pam" refused the money because it was not $1,810, the full amount owed (PCSOF ¶ 7). There is no evidence that Plaintiff actually offered proper payment via certified funds or money order as Defendant had instructed in its correspondence (PCSOF - Exhibit 6; Doc. 168 - Exhibit A [Letter dated April 9, 2002]).

The record shows discussions between Plaintiff and Defendant's representatives regarding a workout plan after Plaintiff had become delinquent on her mortgage. On September 16 and 17, 2002, Defendant's representatives telephoned Plaintiff and left messages on Plaintiff's answering machine that Defendant would consider a repayment plan if Plaintiff made a financial contribution prior to sale (DSOF ¶ 8). Plaintiff did not return these calls (DSOF ¶ 9). Plaintiff instead filed for bankruptcy on September 17, 2002.

Plaintiff did not oppose Defendant's motion for relief from stay filed in Plaintiff's second bankruptcy action and the motion was granted. Plaintiff's bankruptcy filings precluded any further discussion of a workout plan, assistance or mitigation.

The evidence does not support Plaintiff's breach of contract claim. Defendant is entitled to summary judgment on this claim.

<u>Plaintiff's Equal Credit Opportunity Act Claim</u>

In Count 7 of the Third Amended Complaint, Plaintiff alleges that Defendant failed to provide her with adequate notice under 15 U.S.C. § 1691(d). Section 1691(d) states in relevant part as follows:

> (d) Reason for adverse action; procedure applicable; "adverse action" defined.
>
> (1) Within thirty days (or such longer reasonable time as specified in regulations of the Board for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application.
>
> * * *
>
> (6) For purposes of this subsection, the term "adverse action" means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

15 U.S.C. § 1691(d)(1), (6).

Defendant argues, *inter alia*, that under subpart (6), the "adverse action" notification provision does not apply to a request for additional credit where the applicant is delinquent under an existing credit arrangement. Defendant argues that this applies to Plaintiff's situation, that is, Plaintiff was delinquent under an existing credit arrangement. Defendant also argues that during Plaintiff's second bankruptcy action, Defendant moved for relief from the automatic stay so as to carry on the trustee's sale, Plaintiff did not object to this motion

and the motion was granted. Defendant argues that Plaintiff's lack of notice claim under § 1691(d) must fail.

Plaintiff argues that by July 3, 2002, Defendant's representative had all the necessary documents for Plaintiff's homeowner assistance application and Defendant was required to have notified Plaintiff of its action on the application by August 4, 2002. Plaintiff argues that Defendant never notified her of any action on her application and only attempted to contact Plaintiff right before the Trustees' Sale in September 2002.

To establish a procedural violation of the ECOA, a plaintiff must show that the creditor took adverse action against them with respect to a credit application without providing written explanation of the reasons for the adverse action. The notification requirement regarding an "adverse action" under § 1691(d) does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default. Plaintiff was delinquent in her mortgage payments under an existing credit arrangement with Defendant. The notice provision does not apply. Defendant is entitled to summary judgment on Plaintiff's § 1691(d) claim.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 157) is granted.

**IT IS FURTHER ORDERED** that Judgment shall be entered in favor of Defendant and against Plaintiff.

DATED this 29th day of September, 2010.

_____
Earl H. Carroll
United States District Judge